UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN MICHAEL AITKEN,

        Petitioner,

v.                                                                    Case No.  8:10-cv-1124-T-33TGW

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.

_____

## ORDER

This cause is before the Court on Petitioner Steven Michael Aitken's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus.  Aitken challenges multiple trial-based judgments in case nos. CRC03-6995CFANO, CRC03-14879CFANO, CRC03-16033CFANO, CRC03-16035CFANO, CRC03-16040CFNAO, CRC03-16041CFANO, and case no. CRC03-16042CFANO. His judgments arise out of the Sixth Judicial Circuit, Pinellas County, Florida.[1]  Aitken is proceeding on an amended petition (hereinafter "Petition" or "petition"). (Doc. 9).

_____

[1] Aitken combines attacks on his judgments in seven cases. (Doc. 9 at p. 1) The written judgments are separate and distinct. Ordinarily, a petitioner must challenge separate judgments in separately filed habeas petitions, each accompanied by the appropriate filing fee. See Rule 2(e), Rules Governing Section 2254 Cases. However, it appears that Aitken's challenges to his judgments may be entertained in one federal petition because his cases were consolidated for trial and may be regarded as if brought in a single case under state law. See Fla. R. Crim. Proc. 3.151(b), and *Stickles v. State* 44 So. 3d 653 (Fla. 1st DCA 2010) (consolidation for trial of separate cases in which defendant was respectively charged with first-degree murder and fleeing or attempting to elude a law enforcement officer in an agency vehicle at high speed resulted in existence of only a single case against defendant).

1

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

## PROCEDURAL BACKGROUND

After a jury trial held January 9-17, 2006, Aitken was found guilty of a number of offenses in seven of his cases.[2]  He was sentenced on January 17, 2006.  His convictions and sentences are as follow:

• Case no. CRC03-6995CFANO:

> Three counts of robbery with a firearm -- life in prison as a prison releasee reoffender on each count.

> Aggravated assault on a law enforcement officer -- 15 years prison as a prison releasee reoffender, concurrent with count one.

> Fleeing and eluding a law enforcement officer -- 10 years, concurrent with life sentence on count one.

• Case no. CRC03-14879CFANO:

> Grand theft of a firearm -- five years prison, concurrent with life sentence on count one of case no. CRC03-6995CFANO.

• Case no. CRC03- 16033CFANO:

> Two counts of robbery -- life in prison as a prison releasee reoffender on each count. Grand Theft -- five-year prison, concurrent with the sentence on count one.

> Sentences ran consecutively to sentence on count one of case no. CRC03-6995CFANO.

• Case no. CRC03-16035CFANO:

> Robbery -- life in prison as a prison releasee reoffender.

---

[2] The cases were consolidated for trial at the defense's request.

2

Grand Theft -- five years prison, concurrent with sentence on count one.

Sentences ran consecutively to the sentence on count one of case no. CRC03-16033CFANO.

• Case no. CRC03-16040CFANO:

Aggravated Assault (as lesser included offense of attempted felony murder) -- 20 years prison as prison releasee reoffender.

Two counts of robbery -- life imprisonment as a prison releasee reoffender.

Sentences ran concurrently with each other but consecutively to his sentence in case no. CRC03-16035CFANO.

• Case no. CRC03- 16041CFANO:

Two counts of robbery -- life in prison as a prison releasee reoffender on each count.

Grand theft of a motor vehicle -- five years prison.

Grand theft of a firearm -- five years prison.

Sentences ran concurrently with each other and consecutively to sentence on count two in case no. CRC03-16040CFANO.

Misdemeanor conviction for assault -- time served.

• Case no. CRC03-16042CFANO:

Two counts of robbery -- life in prison as a prison releasee reoffender.

Sentences ran concurrently with each other and sentence on count one of case no. CRC03-16041.

Aitken appealed the judgments, and following briefing, the state district court of appeal, on November 14, 2007, per curiam affirmed the judgments in case no. 2D06-324. *Aitken v. State*, 978 So. 2d 163 (Fla. 2d DCA 2007)[table]. Rehearing was denied on December 27, 2007. Aitken did not pursue certiorari review in the United States Supreme Court.

3

Aitken filed a pro se rule 3.850 motion for postconviction relief dated October 6, 2008. On February 17, 2009, the state trial court denied the rule 3.850 motion without an evidentiary hearing. Aitken appealed, and on April 28, 2010, the state district court of appeal per curiam affirmed the state trial court's denial of relief in case no. 2D09-1937. *Aitken v. State*, 36 So. 3d 91 (Fla. 2d DCA 2010)[table]. The mandate issued May 26, 2010.

Aitken improperly sought further review of the per curiam affirmance in the Florida Supreme Court. On May 28, 2010, the Florida Supreme Court dismissed the application for review in case no. SC10-996.  *Aitken v. State*, 37 So.3d 846 (Fla. 2010).

## STANDARDS OF REVIEW

### AEDPA Standard

This petition, filed in 2010, is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's review of both factual findings and legal rulings entered by the state courts in the rejection of Aitken's federal claims. Pursuant to 28 U.S.C. §2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Wood v. Allen*, 542 F.3d 1281, 1285 (11th Cir. 2008), *affirmed*, ___ U.S. ___, 130 S. Ct. 841 (2010); *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Moreover, relief which was denied in state court due to asserted factual error can only be granted on habeas where the state court resolution turned on a determination of facts which was not just incorrect but unreasonable. *Wood*, 542 F.3d at 1285; 28 U.S.C.

4

§2254(d)(2).

Similarly, the legal rulings of claims adjudicated in state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. *See* 28 U.S.C. §2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003). In *[Terry] Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly *identified* the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law even if a federal court might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law, but unreasonably *applies* that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect

5

or erroneous, but *objectively unreasonable*. *Williams*, 529 U.S. at 409-410; *Robinson*, 300 F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman*, 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where constitutional error is determined to exist on habeas review. This test is "less onerous" then the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in this case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional *de novo* standard of review; Aitken has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford*, 311 F.3d at 1295.

**Exhaustion and the State Procedural Default Doctrine**

6

Additionally, before seeking federal habeas relief, a state prisoner to satisfy the exhaustion requirement, 28 U.S.C. § 2254(b)(1), must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature. *See Baldwin v. Reese*, 124 S.Ct. 1347, 1350 (2004). Pursuant to the procedural default doctrine, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, *Wainwright v. Sykes*, 433 U.S. The "cause" excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. at 495-96. (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v.Delo*, 513 U.S. 298, 327 (1995).

In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Schlup*, 513 U.S. at 324, or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S.

at 496.

## Ineffective Assistance of Counsel Standard

To have a facially valid claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The standard of review is "doubly deferential" when "a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, --- U.S.--- ,129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Id.* (quotation marks omitted).

## DISCUSSION

The issues have been fully briefed and the case is ready for decision. No evidentiary hearing is necessary because the record is fully developed and the claims of the Petition raise issues of law, not issues of fact. All of the claims lack merit.

## GROUND ONE

Aitken contends he was denied the right of self-representation. In his supporting facts, he claims that before trial, he invoked his right to represent himself and that on March 7, 2005, the state trial court terminated his pro se status. According to Aitken, the state trial

court did so based on "manufactured" reasons cited by the state trial court judge. (Doc. 9, p. 7).

"The Sixth Amendment ... grants to the accused personally the right to make his defense." *Faretta v. California,* 422 U.S. 806, 819 (1975). Nonetheless, *Faretta* allows "the trial judge [to] terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta* at 834 n. 46.  *See e.g., Diaz v. Secretary for the Dept. of Corr.*, 402 F.3d 1136, 1145 (11th Cir. 2005)("Diaz sought to frustrate the completion of his trial by repeatedly changing his mind regarding self-representation at the guilt phase of the trial. *Faretta* allowed the trial judge to remedy Diaz's misconduct.").

Aitken engaged in dilatory and obstructionist tactics designed to delay and frustrate the administration of justice. His efforts were multi-faceted, including his filing motions that were nonsensical, as well as his pattern of engaging in uncooperative, argumentative, and non-responsive behavior. In addition, he intimidated and disparaged court personnel and the state trial court judge. By his actions, he waived the right of self-representation.

<u>Issues related to Aitken's Representation at Trial</u>

Aitken was furnished appointed counsel, Bruce Johnson, Esq., a day after Aitken's arrest. Within a month, Aitken filed a pro se waiver of attorney. Upon conducting *Faretta* inquiries, the state trial court permitted Aitken to proceed pro se.

On October 29, 2003, attorney Johnson was appointed standby counsel for Aitken. (Resp. Ex. 1, V 1 R 52). Some 23 days later, Aitken requested counsel, and attorney Johnson was reappointed. (Resp. Ex. 1, V 1 R 115), 118).

On December 10, 2003, Aitken was found incompetent to represent himself. (Resp. Ex. 1, V 6 R 1053). Attorney Johnson moved to withdraw, and Charles Holloway, Esq.  was

appointed as successor counsel for Aitken on December 11, 2003. (Resp. Ex. 1, V 1 R 125). Within a month, Aitken filed a pro se motion to dismiss Holloway. (Resp. Ex. 1, V 1 R 127). On May 20, 2004, attorney Holloway moved to withdraw based on Aitken's threat of physical violence. (Resp. Ex 1, V 1 R 138). The trial court granted this motion and appointed Robert Tager, Esq., to represent Aitken. (Resp. Ex. 1, V 1 R 172).

On July 29, 2004, attorney Tager moved to withdraw (Resp. Ex. 1, V 2 R 174), and on October 14, 2004, his motion was granted. (Resp. Ex. 1, V 2 R 187).

On October 18, 2004, Anthony Clifton, Esq., was appointed as standby counsel. (Resp. Ex. 1, V 2 R 199). On December 8, 2004, Aitken filed a waiver of counsel, including standby counsel (Resp. Ex. 1, V 2 R 197), and on January 13, 2005, Aitken filed a pro se motion to remove Clifton and a waiver of counsel. (Resp. Ex. 1, V 2 R 222). The motion was granted. (Resp. Ex. 1, V 2 R 247).

At a hearing on March 7, 2005, the state trial court judge terminated Aitken's pro se status and appointed counsel for Aitken, finding, in relevant part:

> The Court: At this point and time, The Court makes a finding that you are totally unwilling to represent yourself in a logical manner. You refuse to answer inquires by the court. You are totally obstructionist in your filing of motions which are an abuse of process in this system. You've subpoenaed anyone and everyone, not even knowing that there were certain privileges and relevancy issues. You're talking about traffic tickets which have no relevance in this matter. And therefore, I am ... terminating your ability to represent yourself. I am reappointed [sic] counsel over your objection. And we will proceed .. with a conflict attorney to represent you. And if you decide not to cooperate with that attorney, that will be your own problem.

(Resp. Ex. 1, V 2 R 312).

On March 9, 2005, attorney Clifton withdrew as Aitken's counsel, and Dyril Flanagan, Esq., was appointed as Aitken's fourth counsel. (Resp. Ex. 1, V 3 R 373).

On May 12, 2005, Aitken filed a pro se motion to dismiss counsel. (Resp. Ex. 1, V 3 R 386).  On June 16, 2005, attorney Flanagan was discharged. (Resp. Ex. 1, V 3 R 415). On June 21, 2005, James Martin, Esq., was appointed as Aitken's counsel. (Resp. Ex. 1, V 3 R 434, 442).  On August 18, 2005, Aitken filed a pro se motion to dismiss attorney Martin, which was denied on November 1, 2005. (Resp. Ex. 1, V 3 R 515, 517).

On January 5, 2006, Aitken filed another pro se motion to dismiss attorney Martin (Resp. Ex. 1, V 3 R 517), and on January 9, 2006, the trial court appointed Christie Pardo, Esq. as co-counsel with attorney Martin. (Resp. Ex. 1, V 3, R 791).

By then, Aitken, endeavoring to have the state trial judge disqualified and/or to prohibit the trial from proceeding, had filed a series of petitions in the state district court of appeal. On January 13, 2005, Aitken filed a pro se petition for writ of certiorari. His petition in case no. 2D05-223 was dismissed on March 16, 2005, for his failure to comply with a court order. *Aitken v. State*, 902 So. 2d 140 (Fla. 2d DCA 2005)[table]. The next day, the state district court of appeal treated another petition for writ of certiorari filed by Aitken on January 24, 2005, as a petition for writ of prohibition and denied the petition in case no. 2D05- 507. His ensuing construed notice to invoke jurisdiction was dismissed for Aitken's failure to file an amended jurisdictional brief in case no. SC05-996. *Aitken v. State*, 914 So. 2d 952 (Fla. 2005)[table]. On March 18, 2005, Aitken filed another pro se petition for writ of certiorari. Required to file an amended petition, he did so, and on April 15, 2005, the second district court of appeal per curiam denied the petition in case no. 2D05-1374. *Aitken v. State*, 911 So. 2d 107 (Fla. 2d DCA  2005).  Rehearing was denied August 12, 2005.[3]

_____

[3] After trial, on February 23, 2006, Aitken filed a pro se petition for writ of prohibition, which was dismissed as moot on March 29, 2006, in case no. 2D06-788. *Aitken v. State*,

Before jury selection commenced on January 9, 2006, the state trial court recapped various pre-trial proceedings in Aitken's cases. These excerpts bear out the conclusion that Aitken was intent on thwarting the trial court, and in so doing, interfering with the orderly administration of justice in his case. (See Exhibit 1 to this order which contains the recap of the pre-trial proceedings [Respondent's Exhibit 1, V 12 T 19-38]).

The state trial court found from Aitken's actions that he was an obstructionist. Aitken does not overcome the state court's findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor does he demonstrate that the affirmance in his direct appeal resulted in an unreasonable application of *Faretta* or an unreasonable determination of the facts in light of the evidence. Based on the state court record, it is objectively reasonable to conclude that Aitken's frivolous filings and his disruptive, uncooperative, threatening, and obstructionist behavior warranted termination of his pro se status.

Ground one does not warrant habeas corpus relief.

## GROUND TWO

Aitken contends he was denied the right to an impartial jury and a fair trial. He asserts that the State and the state trial court colluded and conspired to empanel four jurors who, according to Aitken, were exposed to extraneous influences before, during, and after voir dire. Aitken's substantive due process claims are unexhausted and procedurally barred. Aitken was represented at trial, and his counsel did not raise a constitutional due process claim concerning the subject jurors before they were selected, or during the jury trial. Nor did counsel preserve a constitutional claim of prosecutorial or judicial misconduct

_____

925 So. 2d 318 (Fla. 2d DCA 2006)[table].

relative to the jury voir dire. Accordingly, these aspects of ground two are now procedurally barred.

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner must have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995)(quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard,* 404 U.S. at 277-78.

Aitken did not properly exhaust his constitutional claim in state court. No federal due process claim was timely raised concerning the jurors, or the actions of the prosecutor, Aitken's counsel, or the state trial court judge relative to the subject jurors. Accordingly, any such claim was not preserved for review.

Florida has a routinely applied the contemporaneous objection rule, which requires that a timely objection be made at trial in order to preserve an issue for review on appeal. *See, e.g., State v. Cumbie*, 380 So. 2d 1031 (Fla. 1980); *Clark v. State*, 363 So. 2d 331 (Fla. 1978). This Court cannot presume that a Florida court ignores its own procedural rules when the Court issues a one-sentence per curiam ruling, as the state district court of appeal did in this case, which is essentially a summary dismissal. Such ruling does not suggest the state appellate court resolved the issue on a federal claim. *See Coleman v. Thompson*, 501 U.S. 722, 735-36 (1991); *see also, Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did

not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

Aitken's failure to timely raise the constitutional dimension of his claim at trial in order to preserve the claim for review deprived the Florida courts of one full opportunity to resolve any constitutional issues regarding the jurors and the prosecutor and trial court's actions by invoking one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(internal quotation omitted). Because Aitken could, if at all, have timely raised and thus preserved his constitutional claims concerning the subject jurors, as well as the prosecutor and state trial court's conduct in regard to the jurors, and then argued his claim on appeal, Aitken was precluded from doing so in a collateral rule 3.850 motion. In Florida, postconviction motions cannot be used as a second appeal for issues that were, or could have been raised on direct appeal. *Parker v. State*, 611 So. 2d 1224 (Fla. 1992). This Circuit has long recognized this aspect of Florida law. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.)(claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.)(under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a rule 3.850 motion), *cert. denied*, 498 U.S. 832 (1990).

Aitken does not suggest he was unaware of his claims when he was tried. Because he could have preserved and then raised the constitutional dimension of any claim of juror,

prosecutorial, and/or judicial misconduct on direct appeal, he was foreclosed from collateral review of a substantive claim in regard to jury selection. *See e.g., Spencer v. State*, 842 So. 2d 52 (Fla. 2003)(substantive claims of prosecutorial misconduct that could and should have been raised on direct appeal are procedurally barred from consideration in a postconviction motion).

If, and to the extent Aitken sought to show ineffectiveness of his trial counsel to excuse default of his due process claims in his pro se brief and/or his rule 3.850 motion, he did not meet both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). See *Jackson v. Herring*, 42 F.3d 1350, 1358 (11th Cir. 1995)(in order to constitute cause sufficient to overcome procedural default, counsel's performance must be constitutionally ineffective under *Strickland*), *reh'g, denied*, 51 F.3d 1052 (11th Cir. 1995). Any further litigation of the cause allegation is barred by the two-year limitation of rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of rule 3.850), *cert. denied*, 498 U.S. 834, (1990), as well as the state's successive petition doctrine. *See e.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Not demonstrating cause, Aitken cannot avoid his default, as the cause and prejudice components are in the conjunctive and both must be established to escape the preclusive effect of his procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982).

Aitken cannot show that a fundamental miscarriage of justice will occur if this Court does not reach the merits of his substantive due process claims. He has no new and reliable evidence of actual innocence. *See Schlup,* 513 U.S. at 324 ("'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial.")

Aitken claims that the prosecutor, the state trial court judge, and defense counsel

colluded "to fraudently cut a path during jury selection to the venireman seated in the venire fronting the defense table. . . ."  Aitken raised his collusion claim in his rule 3.850 motion. In that claim, the postconviction court applied Florida's rules foreclosing use of rule 3.850 for claims which could have been raised on appeal, and addressed only his claim to the extent the claim raised ineffective assistance of counsel.

An alleged error in the original judgment predicated on ineffective assistance of counsel challenges the conviction's validity. *United States v. Denedo*, 129 S. Ct. 2213, 2217 (2009) (citing *Knowles v. Mirzayance*, 556 U.S. 111 (2009)). The cases in which habeas petitioners can properly prevail  on the ground of ineffective assistance of counsel are few and far between. *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)(quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). This is not one of those cases.

Under the "doubly deferential" judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, *Knowles*, 556 U.S. 111, citing *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(per curiam), Aitken's claims of ineffective assistance of counsel fail.

In summarily denying Aitken's claim, the state trial court stated:

> If Defendant's argument is considered to be a claim of ineffective assistance of trial counsel for acting "in collusion and concert" with the State and the judge to negate Defendant's insanity defense, his argument is without merit. The transcript of the voir dire of the jury panel demonstrates that a proper proceeding was conducted.

(Resp. Ex. 11 at 3)

Aitken relied on the state record to conclude that his counsel conspired with the prosecutor and state court to expose his jury to extraneous influences. However, nothing

16

in the state court record supports any conclusion that his counsel engaged in such behavior, or intentionally performed ineffectively as Aitken claims.

In his rule 3.850 motion, Aitken did not set forth facts which, if proven, would overcome the strong presumption that counsel's decisions relative to the jurors and the conduct of the prosecutor and state court judge in relation to the jury were an exercise of counsel's professional judgment. *Strickland*, 466 U.S. at 690; *see also, Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)(ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation with regard to counsel's performance). Vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

Ground two can be denied on *Strickland*'s prejudice prong.  Aitken's speculation does not suffice to meet his burden of demonstrating actual prejudice. Due process requires that a defendant have "a jury capable and willing to decide the issue solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 213, 217 (1982); *see also Peters v. Kiff*, 407 U.S. 493, 501 (1972)(defendant has a "due process right to a competent and impartial tribunal"). The Supreme Court has held "that an impartial jury consists of nothing more than 'jurors who will conscientiously apply the law and find the facts.'" *Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985).[4]

To be impartial, a jury need not be totally ignorant of the parties and issues in the

---

[4] A strong presumption exists against setting aside jury verdicts based on charges of juror misconduct. *Tanner v. United States*, 483 U.S. 107, 120 (1987). The Supreme Court has held that litigants are "entitled to a fair trial but not a perfect one, for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231-32 (1973) (quotation omitted).

case. "[I]t suffices if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Murphy v. Florida*, 421 U.S. 794, 800 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). Regarding juror misconduct specifically, only conduct that deprives a defendant of a fair and impartial trial warrants habeas relief. *Monroe v. Collins*, 951 F.2d 49, 51-52 (5th Cir. 1992).

In his rule 3.850 motion, Aitken did not plead facts which, if adduced, would show that any juror in his case was exposed to any extrinsic influence or any damaging material not introduced at  trial. Nor did he plead facts to establish that a juror had such a fixed opinion that he or she could not judge impartially. *See Patton v. Yount*, 467 U.S. 1025, 1035 (1984). Accordingly, it is objectively reasonable to conclude that Aitken failed to show that but for counsel's actions, there was any reasonable probability of a different outcome at trial. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground two does not warrant habeas corpus relief.

### Ground Three

Aitken challenges the impartiality of the state trial court judge. This claim is unexhausted and procedurally barred. Prior to trial, Aitken filed various pro se applications in an endeavor to recuse the state trial court judge. However, his counsel at trial did not challenge the impartiality of the state court judge. Accordingly, ground three is unexhausted. Because no constitutional claim regarding the impartiality of the judge was raised in a timely manner at trial, thereby preserving the claim for review, ground three is unexhausted, waived and procedurally barred in its entirety. Aitken does not make the required showing to excuse his default.

Ground three does not warrant habeas corpus relief.

## Ground Four

Aitken contends he was denied effective assistance of counsel after his pro se status was terminated. Aitken reasserts his charge of collusion against counsel which he raised in ground two of the instant petition. As shown above, he is entitled to no relief on that claim.  Aitken also faults his counsel for not: issuing the subpoenas Aitken issued while Aitken was proceeding pro se; objecting to purported misconduct on the part of the prosecutor; seeking recusal of the state court judge on grounds of judicial bias; and moving for a mistrial based on purported egregious prosecutorial and judicial misconduct. In his rule 3.850 motion, Aitken did not plead any basis that shows his counsel's performance was ineffective with regard to the jurors or the conduct of the prosecutor or state court judge related to the jurors.

Aitken also claims counsel rendered ineffective assistance for not seeking to recuse the state judge; not objecting to proceeding on the basis he had been determined to be incompetent to stand trial upon attempting suicide some 60 days before trial; and for consolidating his offenses for trial. These grounds are unexhausted and now procedurally barred. Aitken did not fairly present these claims in his rule 3.850 motion. As a result, he waived and defaulted these claims. These claims are foreclosed by the two-year limit of rule 3.850 and the state's successive petition doctrine. Aitken does not make the required showing to excuse his defaults.

Aitken also claims his counsel stood by while he was brought to court to coerce him to abandon his insanity defense and plead guilty. In summarily denying this claim, the state trial court stated:

19

Defendant also claims that the prosecutor scheduled a hearing with trial counsel on December 15, 2005, and "aggressively coerced" Defendant to enter a plea of guilty to the charges. He claims that trial counsel took no action "to question and quash such a hearing for a change of plea' in the absence of a clear desire" by Defendant to change his plea. Attached to Defendant's motion is a letter from trial counsel stating that the prosecutor had scheduled a hearing based on information that it had received which indicated that Defendant wished to enter a guilty plea.

The Court's docket indicates that a status check hearing was scheduled for December 15, 2005, to determine if Defendant wished to change his plea. (See Exhibit B: Court's Docket). At a pretrial hearing conducted on January 4, 2006, the Court noted that at the December 15, 2005, status hearing Defendant refused to speak to the Court when he was asked if he wished to change his plea *(See Exhibit C: 1/4/06 Pretrial Hearing Transcript, p. 5- 6).*

A determination on a claim of ineffective assistance of counsel can be resolved based on an analysis of the prejudice prong of the *Strickland v. Washington*, 466 U.S. 558, 694 (1984), test without addressing whether counsel's performance was actually deficient. *See Atwell v. State*, 978 So. 2d 252, 254 (Fla. 2d DCA 2008). Defendant has failed to demonstrate how he was prejudiced by counsel's failure to move to cancel the December 15, 2005, hearing when Defendant failed to participate in the hearing. This claim is denied. . . . .

(Resp. Ex. 11 at 4).

Aitken does not overcome the presumption of correctness of the state court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor do his allegations overcome the strong presumption counsel's decisions regarding the conduct of the prosecutor at the hearing were the exercise of professional judgment. *Strickland*, 466 U.S. at 690. Aitken does not allege there was any off-record coercion on the part of the prosecutor or his attorney to enter a plea at the hearing, and nothing in the state court record supports Aitken's bald contention that he was brought to court for the purpose of being coerced to plead guilty.

The claim can be denied on *Strickland*'s prejudice prong. Aitken proceeded to jury

trial on his cases, and he fails to demonstrate that but for the claimed omission of counsel, there was any reasonable probability of a different outcome. The state court decision resulted in a reasonable application of *Strickland* and a reasonable determination of the facts in light of the evidence.

Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Aitken's petition is denied.  The Clerk is directed to terminate all pending motions, to enter judgement and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on July 19, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Steven Michael Aitken